IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| W.S.B. & ASSOCIATES,<br><br>        Petitioner,<br><br>    v.<br><br>SERVICE EMPLOYEES<br>INTERNATIONAL UNION, LOCAL 1877,<br><br>        Respondent.<br>_____/ | No. C 08-05266 WDB<br><br>**ORDER ON MOTIONS** |

Petitioner W.S.B. & Associates, Inc. ("WSB") has filed a motion for summary judgment on its petition to vacate an arbitration award, and motion to dismiss the cross-petition for confirmation of the arbitration award, filed by Respondent Service Employees International Union, Local 1877 (the "Union"). The Union has moved to confirm the arbitration award and seeks an award of attorneys' fees. On September 11, 2009, the Court held a hearing on the motions at which the parties were represented by counsel. For the reasons set forth below, the Court DENIES WSB's motions, GRANTS the Union's motion to confirm the arbitration award, and DENIES the Union's request for attorneys' fees.

# FACTUAL AND PROCEDURAL BACKGROUND

The essential factual allegations are undisputed.

On or about June 5, 2001, WSB and the Union entered into a written collective bargaining agreement with a stated term from June 1, 2000, to May 31, 2005. Pet., Ex. A. Section 17 of the CBA provides for grievance procedures for disputes arising out of the CBA, subject to certain stated limitations. Specifically, Section 17.3 of the CBA states as follows:

> A grievance need not be considered unless the aggrieved party serves upon the other parties a written statement setting forth the facts constituting the alleged grievance. For a disciplinary case grievance, such notice must be served within ten (10) days from the date of discharge. Such written statement concerning any other type of grievance must be served within fifteen (15) days of its occurrence or the discovery thereof by the aggrieved party.

Pet., Ex. A at 13.

The CBA called for a wage increase for all employees to become effective in June 2004, as reflected in Appendix A. *See* Pet., Ex. A § 8.1 ("The wage rates for PG&E security officers shall be as listed in **Appendix** A.") WSB represents, and the Union does not dispute, that on June 3, 2004, the president of WSB, Bobby Sisk, met with the Union president, Mark Sherwood, and two shop stewards for the job site at PG&E. In its arbitration brief, WSB stated that the purpose of the June 3 meeting was to inform the union that PG&E would not give WSB an hourly rate increase for WSB employees assigned there. Pet., Ex. C (Sisk Post-Hearing Arbitration brief). In a letter to the Union dated June 23, 2004, however, Mr. Sisk indicated that at the June 3 meeting, "my customer was working on trying to get us a 1.5% increase, and that I would match their increase by 1.5% for a total increase of 3%." Supplemental Declaration of Daniel Boone in Opposition to Pet's Motion ("Suppl. Boone Decl.), Ex. B (Arbitration Exhibits) at ER 16. Mr. Sisk further stated in the June 23 letter that on June 21, 2004, PG&E informed him that "as a result of their budgetary restrictions," PG&E would not approve an increase for WSB employees. Suppl. Boone Decl., Ex. B at ER 16. Mr. Sisk's June 23 letter indicated that WSB would

1  "continue to look at ways, if any on how we may be able to increase the hourly rates."
2  *Id*. Allegedly because of the unanticipated shortfall in funding under its contract with
3  Pacific Gas & Electric, however, WSB did not implement the 2004 wage increase
4  until a year after it was initially due, in June 2005.

5  On November 26, 2006, the Union filed a grievance, alleging that the
6  employees covered by the CBA were being paid incorrect wages "due to a lack of
7  wage increases in June of 2004, as was allowed for in the contract." Pet., Ex. B.

8  During a hearing on July 9, 2007, on consolidated grievances, the parties agreed
9  that Arbitrator Thomas Angelo serve as the mutually agreed upon arbitrator to hear
10 the Union's grievance concerning the 2004 wage increase dispute. Suppl. Boone
11 Decl., Ex. B. at JT 8 (July 16, 2007, Decision and Award).

12 An arbitration hearing on the 2004 wage dispute was held on August 31, 2007.
13 WSB was not represented by counsel, but Mr. Sisk, as WSB's president, appeared at
14 and participated fully in the arbitration hearing. Arbitrator Angelo conducted the
15 hearing, at which witnesses were called and evidence was presented, and accepted
16 post-hearing briefs from both parties.

17 In his opening statement at the arbitration hearing on behalf of WSB, Mr. Sisk
18 stated as follows:

> Notwithstanding the fact that both Mr. Tanner and Mr. Sterling met twice with Mr. Sherwood in my office in the month of June 2004, my June 23rd, 2004, letter is a follow-up to that meeting addressed to Mr. Mark Sherwood letting him know that at that time we were having problems trying to get an increase from Pacific Gas and Electric. . . .
>
> [T]he purpose of the other documents are [sic] to demonstrate that for nearly 18 months there was no real discussion on the 2004 raises to the extent where any formal demand was made until the October 24th, 2006, letter from Mr. O'Leary.
>
> The purpose of supplying all of the documents with respect to negotiations will demonstrate that everybody sort of went along with this whole notion until they got mad when the Collective Bargaining Agreement was not accepted by the bargaining

3

> members. It was only at that time that they assert via this November 24th, 2006, letter a demand for 2004 wages.

Suppl. Boone Decl., Ex. A (8/31/07 Hrg. Trans.) at 12-14.

The parties agreed during the arbitration hearing to submit written closing arguments. 8/31/07 Hrg. Trans. at 44. Mr. Sisk submitted an arbitration brief, dated September 10, 2007, on behalf of WSB. Because the parties have raised an issue about the text and context of WSB's post-hearing brief, the relevant portions are reproduced here:

### Background

In June of 2004 as per Union Agreement a raise was due to all Union Members. Prior to this time PG&E has sent all security contracts of for bid. In late 2003. Our company was awarded another contract. At that time neither the Union nor WSB gave any attention to the fact that a contract between them was broken by the re-bid. Near the end of 2003 WSB was given a new contact from PG&E. An hourly rate increase was due as per union agreement on June 1, 2004. On June 3, 2004 there was a meeting in Bobby Sisk office with Mr. Mark Sherwood, Union President and the two (2) Shop Stewards for the PE&E job site. The reason for the meeting was to inform the union that PG&E was not going to give WSB an hourly increase. This information was also followed-up (via) a letter, date June 23, 2004 from Bobby Sisk following up on the June 3, 2004 meeting with respect to attempting to get an hourly increase from. PG&E. From June 3, 2004 until after a rejection of a new contact to start June 1, 2005 the union had not raised this issue until they sent a letter to WSB, dated November 24, 2006. This November 24, 2006 letter came nearly 17 months later as the union's response to my June 3, 2004 meeting. A raise was given June 1, 2005, which represent June 1, 2004. WSB was able at that time to get the 4% increase for 2004. <u>(See attached Sisk letter to union, dated June 23, 2004. Also, see attached letter from union, dated November 24, 2007).</u>

> **The Union Should Not Prevail:** It is clear that the Union understood in the June 3, 2004 meeting that WSB was having problems getting an increase from the customer. It is clear from WSB's follow up letter dated, June 23, 2004 that the union was in agreement that this was/would be an on-going problem. The lack of response from the Union clearly shows that they understood. The fact that the Shop Stewarts sent an email to PGE complaining about their union **(See attached email addressed to Mr. Sibilla from the Shop Stewards)** on this matter clearly shows that the union was supportive of WSB. There is no written request and or demand from the union addressed to WSB until November 24, 2006. This November 24, 2006 letter is the only creditable letter that the union has. During the nearly 17 months of meeting with these same persons, while there is paper work on attempting to work out a new contract, non of the paper work makes any mention of a wage 2004 problem. The Union produced a Grievance form at the Hearing. **(See attached Grievance form, dated June 26, 2004)** However, as stated by Bobby Sisk in the August 31, 2007 Hearing WSB nor Bobby Sisk had seen this document and/or any thing from the union until the day of the hearing. This form is not consistence with the union's standard forms. In reviewing the form there is no employer name and the top half of the form is not filled out. It appears that this was put together in order to appear that Sisk/WSB had a grievance dated in 2004. Also, it has Section 8.7 on it. This appears to be an attempt to get some one to believe that the document has been around for some time. However, this document was not product and or used in our management hearing with two (2) persons from the union and two (2) persons from WSB. This document should not be allowed. I objected to it at the hearing. Even if this document is allowed the union failed by not following the steps in Section 17 1 to 12. The union produced an email, dated August 18, 2006. This email was part of our on going negotiations whereby I was trying to get the union to settle for a 2% yearly increase because of the out of control medial cost. This email was followed up by a meeting in which the union was open to consider a new medical plan if WSB would pass the saving on medical to it's union members. This did not work because of WSB's claim that any saving should come back to WSB because union members has not in the past two (2) years paid in medical increases. **(See attached my June 1, 2006 email and a August 18, 2006 email from the Union).**
>
> **Request For Remedy:** The Union wants to use Section 8 of the agreement 8.7. This part of this section is clear with respect to an employer intentionally violating the agreement. It is/was made clear that the employer took/made every effort by having a meeting on June 3, 2004 with the union, contacting the customer and a follow up letter to the union dated June 23, 2004. It is also noted that Section 17 17.1 to 17.12 provides for the necessary steps for both parties to take as it relates to any grievance. The union has not product any information showing that they attempted and or followed this procedure. The only contact until the union's November 24, 2006 made and followed up was from WSB. The union should not be allowed to use this as a remedy since they failed to file as stated in Section 17 and also has failed to prove that the employer willfully violated the agreement. The facts are clear. When the employer received the hourly increase on or about June 6, 2005 it was paid on the union members next pay check. **(See attached copy of Section 17, 17.1 to 17.12.)**

Pet., Ex. C.

On October 5, 2007, Arbitrator Angelo issued a Decision and Award, sustaining the Union's grievance in its entirety and ordering WSB to pay the unpaid wage

1  increase for the period from June 2004 to June 2005, plus a payment of wages for
2  each Union member at the corrected rate for the remedial period. Pet. Ex. D. In
3  determining this remedy, the Arbitrator cited Section 8.7 of the CBA, which provides
4  as follows:

> In the event the Employer intentionally violates this Agreement by failing to pay the proper wage rate to an employee (except in cases of recognized clerical error), said Employer shall pay the employee an amount equal to double the proper wage rate for the period of violation.

Pet., Ex. A § 8.7.

On November 20, 2008, WSB filed a Petition to Vacate Arbitration Award. On December 9, 2008, the Union filed a Cross-Petition to Confirm the Arbitration Award. During case management proceedings with the Court, the parties agreed to submit the matter on cross-motions for summary judgment concerning the cross-petitions for vacatur and confirmation of the arbitration award.

**DISCUSSION**

I.  Jurisdiction

This Court has jurisdiction to vacate or enforce compliance with an arbitration award under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Petitioner alleges, erroneously, that the Federal Arbitration Act, 9 U.S.C. § 10, and the California Arbitration Act, Code of Civil Procedure § 1286.2, provide additional bases for jurisdiction. Neither the Federal Arbitration Act, nor state law, governs judicial review of arbitration awards involving collective bargaining agreements. *See Kemner v. District Council of Painting and Allied Trades No. 36*, 768 F.2d 1115, 1118 n.1 (9th Cir. 1985); *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1212 (9th Cir. 1980) ("When principles of federal labor law are involved, they supersede state contract law or other state law theories."). The Court therefore proceeds under Section 301 of the LMRA.

II.   Applicable Standard

   A.   Motion for Summary Judgment

To succeed on a motion for summary judgment, the moving party must establish that, under facts that are not subject to genuine dispute, that party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56(c). In reviewing a motion for summary judgment, the Court considers the evidence in the light most favorable to the party against whom the judgment is sought.

   B.   Judicial Review of Arbitration Award

Judicial scrutiny of an arbitrator's decision in a labor dispute is extremely limited. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 986 (9th Cir.), *as amended*, 275 F.3d 1187 (9th Cir. 2001). The arbitrator, as the party chosen by the parties to resolve grievances under their CBA, is entitled to considerable deference, and his decision may be vacated only if it failed to derive its essence from the CBA itself; exceeded the scope of the issues submitted; violated an "explicit, well defined, and dominant" public policy; or was procured by fraud. *Id.; Virginia Mason Hosp. v. Washington State Nurses Ass'n.*, 511 F.3d 908, 913-14 (9th Cir. 2007) (citing *E. Associated Coal Corp. v. United Mine Workers of Am.*, 531 U.S. 57, 62 (2000); *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)).

The Court may vacate the arbitrator's award if he ignored the plain language of the CBA, or the arbitrator's interpretation of any of the relevant CBA provisions was not, on its face, a plausible interpretation of the contract. *Virginia Mason Hosp. v. Washington State Nurses Ass'n.*, 511 F.3d 908, 913 -914 (9th Cir. 2007) (quoting *Phoenix Newspapers, Inc. v. Phoenix Mailers Union Local 752*, 989 F.2d 1077, 1080 (9th Cir.1993)). "Even if we were convinced that the arbitrator misread the contract or erred in interpreting it, such a conviction would not be a permissible ground for vacating the award." *Id.* (citing *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 37-38 (1987) (footnote omitted).

Procedural questions growing out of a dispute properly submitted to arbitration are for the arbitrator to decide. *United Steelworkers of America, AFL-CIO-CLC v. Smoke-Craft, Inc.,* 652 F.2d 1356, 1360 (9th Cir. 1981). Under the LMRA, the arbitrator's view of the scope of his or her powers and issues submitted for arbitration receives the same judicial deference as the arbitrator's decision on the merits. *New United Motor Mfg., Inc. v. United Auto Workers Local 2244,* 617 F.Supp.2d 948, 960 (N.D.Cal. 2008) (citing *Sheet Metal Workers' Int'l Ass'n Local Union No. 359 v. Madison Indus.,* 84 F.3d 1186, 1190 (9th Cir.1996)).

III. WSB's Motion for Summary Judgment

Petitioner's motion for summary judgment advances several grounds for vacating the arbitration award: (1) the grievance was not filed in a timely manner; (2) the CBA had expired by the time that the Union filed the November 26, 2006, grievance;  and (3) Section 8.7 of the CBA is unenforceable and void as a penalty clause.

A. Untimeliness of Union Grievance

WSB contends that the Arbitrator exceeded his authority by arbitrating a grievance that was served well beyond the 15-day limit provided in the CBA. The Union contends that WSB waived the untimeliness objection by agreeing to appear before the Arbitrator on the 2004 wage increase dispute.

As noted above, the pertinent language in the CBA is: "A grievance **need not** be considered unless the aggrieved party serves upon the other parties a written statement . . . . Such written statement . . . must be served within fifteen (15) days of its occurrence or the discovery thereof by the aggrieved party."

An arbitrator could rationally interpret this language as having the following effect: it requires grievance proceedings to go forward if the grievant complies with the deadline but it permits the parties to the contract to go forward with the grievance

procedure even if the grievant does not comply with the deadline. This provision does not purport to declare that arbitration-jurisdiction over a grievance evaporates, regardless of the parties' wishes or conduct, if the grievance is not timely filed. In this important sense, this provision is not jurisdictional. It permits parties to elect to waive an objection to timeliness.

WSB alleges that it was engaged in negotiations or discussions with the Union about the missed pay raise for months after the 15-day deadline passed. Yet WSB never suggested to the Union that it had no standing to pursue this matter because the 15-day deadline had passed.

Instead, when the obviously very tardy grievance finally was formally presented, WSB, through its president, worked with the Union to select an arbitrator, agreed to a hearing date, showed up at the hearing and participated fully -- after hearing the arbitrator announce at the beginning of the proceedings and on the record that the parties had stipulated that the matter was properly submitted to him for determination. During the hearing, WSB made arguments and presented evidence about how the CBA should be interpreted and applied. WSB never stated that it believed that the arbitrator did not have authority to rule on the submitted matter.

In post-hearing arbitration briefs, WSB pressed the point about the long delay between the breach and the filing of the grievance -- but the arbitrator reasonably could have understood, and apparently did understand, that when WSB was pressing this point it was for the purpose of trying to persuade the arbitrator about how to interpret and apply (in the specific circumstances the parties had encountered) the terms of the contract -- <u>not</u> for the purpose of contending that the arbitrator had no authority to hear and determine the matter because the grievance had not been filed within 15 days of the breach. WSB seemed to press the points about the passage of time, and about the intervening discussions with the Union, to support a contention that its violation of the contract was not "intentional" (as the parties intended that phrase in the CBA to be interpreted), willful, or informed by bad faith. In sum, it was

9

perfectly rational for the Arbitrator to conclude that WSB's arguments about delay in filing the grievance were intended to support WSB's views about which remedies the CBA left available -- and about the play in making that determination the Arbitrator should give to equitable considerations.

In this Circuit, a party that participates voluntarily in an arbitration under a CBA waives its right to challenge the jurisdiction of the arbitrator, or the arbitrator's rulings about the scope of his jurisdiction, unless that party unequivocally (expressly, clearly) objects to the arbitrator's jurisdiction and preserves its right to challenge that jurisdiction in court. *Van Waters & Rogers Inc. v. International Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers of America, Local Union 70,* 913 F.2d 736, 740 (9th Cir.1990) (citing *George Day Construction Co. v. Carpenters Local 354,* 722 F.2d 1471, 1475 (9th Cir.1984)). We find that WSB waived its right to press this challenge to the Arbitrator's jurisdiction by failing to clearly register or preserve an objection to the Arbitrator's authority to hear this dispute.

It follows that we must DENY WSB's motion for summary judgment on the ground that the Union's grievance was untimely.

### B.     Expiration of CBA

WSB also seems to contend the Arbitrator exceeded his authority on the ground that the CBA had expired in June 2005. This argument was never presented to the arbitrator -- and therefore was waived.  If WSB had preserved it, the argument would be unavailing on the merits -- because the issue presented to the arbitrator was what remedy, if any, should be awarded to the Union for an alleged breach that occurred while the CBA indisputably was in effect (between June 1, 2004, and May 31, 2005). It was legally irrelevant whether a CBA was in effect at the time the arbitration hearing occurred.  WSB's motion for summary judgment on this ground also is DENIED.

10

C.  Unenforceability

WSB contends in its moving papers that the arbitrator violated established public policy against unenforceable liquidated damages provisions by awarding not only the 4% wage increase, but an additional payment of the total amount of wages for the period of violation. WSB did not present this unenforceability argument to the arbitrator and did not raise it in its Petition in these court proceedings. By depriving the arbitrator of an opportunity to consider this issue -- and the parties of an opportunity to develop the kind of evidentiary record that would be necessary to rule fairly on it -- WSB also has waived this ground for objecting to the arbitrator's decision.

IV.  Union's Motion for Confirmation of Arbitration Award

A.  Arbitration Award

For the reasons discussed above, the Union's motion to confirm the Award is GRANTED.

B.  Request for Attorneys' Fees

The Union seeks an award of attorneys' fees. The court may assess attorneys' fees "when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *International Union of Petroleum and Indus. Workers v. Western Indus. Maintenance, Inc.*, 707 F.2d 425, 428 (9th Cir.1983) (citation omitted).

Given the substantial delay in the filing of this grievance, WSB's proffered justifications for its failure to timely implement the 4% increase in pay, the on-going discussions during 2004 and 2005 between WSB and the Union about this matter and the medical benefits situation (and the inferences that WSB might reasonably have drawn therefrom about the status of this dispute), and the arguably counter-intuitive character of the sanction imposed in the arbitration award (disproportionate to the

11

harm caused by the breach), we are not prepared to find that WSB's resistance to paying the Arbitrator's award was wholly without arguable justification or inspired by bad faith. On this record, we DENY the Union's motion for an award of attorneys' fees. *See New United Motor Mfg., Inc. v. United Auto Workers Local 2244,* 2008 WL 5068523 (N.D.Cal., Nov 25, 2008) (denying award of attorneys' fees after denial of petition to vacate arbitration awards).

## CONCLUSION

For the foregoing reasons, the Court rules as follows:

(1) WSB's Motion for Summary Judgment and Motion to Dismiss Counter-Claim are DENIED, and the Petition to Vacate the Arbitration Award is DENIED;

(2) The Union's Motion for Confirmation of Arbitration Award is GRANTED;

(3) The Union's request for fees is DENIED.

(4) The matter is REMANDED to Arbitrator Angelo to calculate the amount of damages due and owing under the Award.

(5) Judgment will be entered in favor of the Union and against WSB.

**IT IS SO ORDERED.**

Dated: September 14, 2009

WAYNE D. BRAZIL
United States Magistrate Judge